## LOUIS ROSADO *v.* STATE OF MARYLAND

[No. 406, September Term, 1976.]

*Decided January 4, 1977.*

The cause was argued before MORTON, THOMPSON and LISS, JJ.

*John J. Garrity, Assigned Public Defender,* with whom was *Norman N. Yankellow, Public Defender for Baltimore City,* on the brief, for appellant.

*Gilbert Rosenthal, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, William A. Swisher, State's Attorney for Baltimore City,* and *Joseph*

*Fleischmann, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

LISS, J., delivered the opinion of the Court.

In a court trial in the Criminal Court of Baltimore (Hargrove, J., presiding), the appellant, Louis Rosado, was convicted of assault with intent to murder and the use of a handgun in a crime of violence. Sentences were imposed, and it is from these judgments that this appeal was filed.

Sylvester Ferguson, the alleged victim, testified that on April 29, 1975, he was walking down a street in Baltimore City with a friend when the appellant ran out of an alley and shot him twice. He indicated that a few days earlier he had had a discussion with the appellant in which he protested the relationship between the appellant and the victim's wife. He denied having a weapon at the time of the altercation. The hospital records, admitted over objection, indicated that Ferguson had been shot twice in the abdomen — one bullet lodging on the right side and the other on the left side.

The appellant took the stand and testified that Ferguson had ordered him to stay away from his wife. On the day of the altercation he was en route to his grandmother's house when Ferguson ran out from behind a car and began shooting at him. He ran at Ferguson who dropped his gun and ran. Rosado picked up the gun and chased Ferguson, firing two shots at him during the pursuit. He stated he did not know whether Ferguson was hit by the shots which he fired.

The case was then submitted to the trial court which ruled that the appellant's version of the incident was incredible to the court, and that the physical facts demonstrated by the hospital records were inconsistent with the appellant's testimony. The court further ruled that the appellant's own testimony negated the theory of self-defense. On the basis of these conclusions the Court found the appellant guilty and imposed sentence.

The appellant has raised four issues to be considered by this Court. Initially, he contends that the trial court abused

its discretion in unduly limiting the scope of cross-examination of the prosecuting witness as to his attempt to have the charges against the appellant withdrawn. We agree that this was an abuse of the trial court's discretion and shall reverse.

The transcript reflects the following colloquy between the trial court and counsel.

"Q. Since this has happened, have you personally gone to the Eastern Police Station and indicated to anybody there —

MR. FLEISCHMANN: Objection.

MR. LEVINSON: I haven't finished my question.

THE COURT: I can anticipate it. It is an improper question. That is not his function.

MR. LEVINSON: Well, if Your Honor please, I think it might not be his function with respect to a charge brought by the State, but I think it can bring out the demeanor of the witness with respect to the crime that we are talking about. It goes to credibility also.

THE COURT: Well, how can it go to credibility?

MR. LEVINSON: Well, if the man — if you are anticipating the question that I wanted to ask him that he wanted to drop the charges in this matter immediately after it happened —

THE COURT: It is not relevant.

MR. LEVINSON: I take exception.

THE COURT: It is not relevant. It is not his function to drop the charges. That's the State's function solely."

It is, of course, a well-settled legal principle that the extent of cross-examination is vested in the sound discretion of the trial court. *Williams v. State*, 15 Md. App. 320, 290 A. 2d 542 (1972); *Jenkins v. State*, 14 Md. App. 1, 285 A. 2d 667 (1971); *Long v. State*, 7 Md. App. 256, 254 A. 2d 707 (1969).

Where, however, the limitations imposed by the court on cross-examination are such as plainly to inhibit the ability of the accused to obtain a fair trial, the general rule is manifestly inapplicable. *Shupe v. State*, 238 Md. 307, 208 A. 2d 590 (1965). We said in *Mulligan v. State*, 18 Md. App. 588, 596, 308 A. 2d 418, 423 (1973):

> "That a witness may be cross-examined on such matters and facts as are likely to affect his credibility, test his memory or knowledge or the like, is a fundamental concept in our system of jurisprudence. *Kantor v. Ash*, 215 Md. 285; *Bryant v. State*, 4 Md. App. 572. And cross-examination to impeach, diminish, or impair the credit of a witness is not confined to matters brought out on direct examination; it may include collateral matters not embraced in the direct examination to test credibility and veracity, it being proper to allow any question which reasonably tends to explain, contradict, or discredit any testimony given by the witness in chief, or which tends to test his accuracy, memory, veracity, character, or credibility. 3 Wharton's Criminal Evidence, Sections 870, 871; 58 Am. Jur. *Witnesses* Section 625. Of course, the right to cross-examine effectively necessarily includes the right to place the testimony of a witness in its proper setting to fairly enable the jury to judge its credibility. *Smith v. Illinois*, 390 U. S. 129; *Alford v. United States*, 282 U. S. 687; *Plank v. Summers*, 205 Md. 598."

The right of cross-examination here explicated is the same whether the trial be before a jury or before the court without the intervention of a jury.

The conflicting evidence offered by the victim and the accused was crucial in determining the degree of guilt, if any, of the accused. If the accused's version of the incident was believed, the trial court could have found that the incident was provoked by the victim. The court also could have found that the unjustified attack on the accused by the

victim was a circumstance of substantial mitigation sufficient to reduce to manslaughter a killing which otherwise would have been murder. If such mitigation existed, the accused might not have been guilty of assault with intent to murder, even though he could be found guilty of common law assault. *Finnegan v. State*, 33 Md. App. 251, 364 A. 2d 124 (1976).

The accused's version of how he came into possession of the handgun, if believed, would have raised some question, at least of his guilt or innocence of the handgun violation.

This was a one-on-one confrontation both on the street and in the courtroom. The appellant was entitled to pursue on cross-examination the question of whether or not the victim had attempted to withdraw the charge against the appellant. He may not have done so, or in the alternative, he might have done so; and if he did, there are innumerable reasons or explanations for his conduct. The appellant was entitled to have this information before the trier of the facts as a test of the victim's credibility and veracity. The trial court's refusal to permit the exploration of these facts and circumstances was an abuse of its discretion.

We have considered the other grounds urged by the appellant, and as to the second and third of these grounds we find no merit in the appellant's contentions. The fourth contention that the appellant did not waive his right to a jury trial is moot since the appellant may exercise his choice in the new trial mandated by this opinion.

*Judgments reversed; remanded for new trial.*
*Costs to be paid by Mayor & City Council of Baltimore.*